## TAUBER AND GOULD, TRUSTEES *v.* MONTGOMERY COUNTY COUNCIL, ET AL.

[No. 476, September Term, 1965.]

*Decided November 10, 1966.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, BARNES and FINAN, JJ.

*James R. Miller, Jr.,* with whom were *Miller, Miller & Canby* on the brief, for appellants.

*Charles G. Dalrymple, Assistant County Attorney,* with whom was *Robert G. Tobin, Jr., County Attorney,* on the brief, for Montgomery County Council, part of appellees and *William S. Green* for George D. Hansen, and others, other appellees.

BARNES, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Montgomery County (Anderson, J.), dated October 25, 1965, denying the petition of the appellants to vacate and declare null and void the resolution of the appellee, the Montgomery County Council, sitting as a District Council, for that portion of the Maryland-Washington Regional District located in Montgomery County (District Council), denying the appellants their requested change from the R-60 zone to the R-H zone of 4.825 acres of the appellants' land located at the northeast quadrant of the intersection of Massachusetts Avenue and Westbard Avenue in Bethesda, Montgomery County.

The 4.825 acre tract (the subject property) has a frontage of approximately 786 feet on Westbard Avenue on the west, 211 feet of frontage on Massachusetts Avenue on the south, and 347 feet of frontage on Crown Street to the north, a dedicated but undeveloped street. On the east, the subject property is bounded for its entire length of 1,036 feet by the right-of-way of the Georgetown branch of the Baltimore and Ohio Railroad Company. To the east of the railroad right-of-way and approximately 250 feet from the easterly line of the subject property is Little Falls Parkway which dead-ends at Massachusetts Avenue. The subject property is covered with large, old trees and the terrain is hilly and rugged, but typical of the surrounding area.

The property to the east, south and west of the subject property is zoned R-60 (single-family detached houses and certain institutional and other uses) ; the property to the northeast is zoned I-2 (heavy industrial). To the west of the subject property across Westbard Avenue, is the Western Suburban Junior High School and a library, behind which is the Roman Catho-

lic Church of the Little Flower and its parochial school complex. To the south, across Massachusetts Avenue, are two churches and their respective parking lots. To the east, across the railroad right-of-way are Little Falls Park, Little Falls Parkway and additional park land. To the northeast, across Crown Street are the off-street parking facilities for an adjacent large office building known as the Westwood Office Building. Farther north and northwest is the Westwood Shopping Center. To the west of the schools and the church of the Little Flower and to the south of the two churches across Massachusetts Avenue are attractive single-family individual homes.

Shortly after the R-H zone (a "floating" high-rise apartment zone) was created by the Montgomery County Council in 1962, application was made to rezone the subject property from R-60 to R-H and was denied by the District Council. The present application which also seeks rezoning from the R-60 zone to the R-H zone shows an attractive proposed apartment building, seven stories above ground at the main entrance with two floors below grade for parking, together with tennis and handball courts and a swimming pool. The application complies with the green area and set back provisions required in the R-H zone.

The Technical Staff of the Maryland-National Capital Park and Planning Commission recommended approval of the application but the Montgomery County Planning Board declined to accept this recommendation and recommended denial because in its opinion the request for rezoning was premature and would create "a potentially hazardous and undesirable traffic situation." At the hearing on July 30, 1964, before the District Council, the applicants presented expert testimony indicating that the proposed development would not generate sufficient traffic to have a significant effect upon the operational safety of the adjacent streets. This opinion, however, was based upon a traffic count for one hour in the morning and one hour in the afternoon of February 7, 1964, at the intersection of Massachusetts Avenue and Westbard Avenue. Certain witnesses for those protesting against the granting of the application, testified that there were severe traffic conditions at the intersection. One witness testified that at times the traffic was backed up

from the intersection in both directions for over one-half a mile and that there had been a number of accidents at what he described as a traffic bottleneck. There was other testimony on behalf of the protestants indicating a dangerous traffic condition at the intersection which would be aggravated by the erection of the proposed apartment house. At the time of the hearing neither the widening of Massachusetts Avenue, nor the extension of Little Falls Parkway (both single-lane highways) were immediately contemplated. The District Council on October 13, 1964, denied the application on the ground that the applicants had not established to its satisfaction by the evidence "that development of the subject property in the R-H zone would be compatible with the surrounding area." The District Council indicated that the R-T zone (a "floating" zone for town houses) would be far more appropriate than the R-H zone and that the proposed apartment house would dominate the nearby high quality single-family residential community and would result in an unwarranted traffic hazard. Judge Anderson, in a comprehensive and well-considered opinion, affirmed the action of the District Council in denying the application.

The appellants contended in the lower court and before us that the action of the District Council in denying the requested rezoning was arbitrary, unreasonable and capricious allegedly because there was insufficient evidence before the District Council to make its denial fairly debatable. We agree with the lower court that the issue before the District Council was whether the R-H zone was compatible with the surrounding area and that there was sufficient evidence before the District Council from the report of the Planning Board and the testimony of the protestants in regard to the traffic hazard to make that issue fairly debatable.

Although the Maryland "original mistake in zoning-change in conditions in the area" rule is not applicable in considering rezoning for an R-H zone as a "floating zone" in view of our decision in *Beall v. Montgomery County*, 240 Md. 77, 212 A. 2d 751 (1965) and in the recently decided case of *Bujno v. Montgomery County Council*, 243 Md. 110, 220 A. 2d 126 (decided June 8, 1966), it is clear that the District Council must determine on the evidence that the proposed R-H rezon-

ing is compatible with the surrounding area. *Bujno v. Montgomery County Council, supra.* As the evidence made this issue fairly debatable, the courts may not substitute their judgment for that of the District Council upon this issue. See *Board of County Commissioners for Prince George's County v. Farr,* 242 Md. 315, 218 A. 2d 923 (1966).

The appellants also contended below and before us that they were denied all reasonable use of the subject property by the existing R-60 zoning and were thus deprived of their property without due process of law or the payment of just compensation. In the R-60 zone, in addition to one-family detached dwellings, various institutional uses are permitted, including churches and other places of worship, libraries, museums and publicly owned buildings. Although there was evidence indicating that the subject property could not be reasonably used for one-family detached dwellings, it is clear from our decisions that to establish unconstitutionality of existing zoning because of a denial of *all* reasonable use of the subject property, the owner must establish that the property cannot reasonably be used for any of the permitted uses in the existing zone. *Mayor and C. C. of Baltimore City v. Borinsky,* 239 Md. 611, 624, 212 A. 2d 508, 515 (1965). This the applicants failed to do.

The final contention of the applicants in the lower court and in this Court was that Section 104-32 of the Montgomery County Zoning Ordinance is unconstitutional. This section provides, in effect, that after two applications have been filed subsequent to November 30, 1958, and have been affirmed or denied on the merits (or withdrawn without a resolution that the limitations of Section 104-32 should not apply), no application for rezoning shall be accepted within three years after the filing of the last application, for a rezoning within the same general classification of rezoning, that is, multi-family R-40 through R-10 and R-H, commercial (C-O, C-1 or C-2) or industrial (I-1, I-2 or I-3) or for a lower classification, *except* with the consent of the County Council after a showing by the applicant of substantial new facts. The short answer to this contention is that this Court will refrain from deciding constitutional questions not essential to the proper disposition of the case on the record before us (see *Day-*

338

*hoff v. State,* 206 Md. 25, 34, 109 A. 2d 760, 764 (1954)), and, as the appellants have not yet filed a third application in which the County Council has not applied the "escape clause" provided for in Section 104-32, this question is presented prematurely and its decision is not at all necessary for the decision of the case at bar. Consequently, we decline to pass upon the question.

*Order affirmed, the appellants to pay the costs.*