## CAPLAN BROS., INC. *v.* THE VILLAGE OF CROSS KEYS, INC.

[No. 67, September Term, 1975.]

*Decided February 11, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Robert Allen Sapero,* with whom were *Gerard King Stevens* and *Sapero & Sapero* on the brief, for appellant.

*Amicus Curiae* brief filed by American Subcontractors Association of Baltimore, Inc., *Charles Yumkas, Max S. Stadfeld* and *Blum, Yumkas, Mailman & Gutman* on the brief.

*Amicus Curiae* brief filed by The Mechanical Contractors' Association of Maryland, Inc. and Associated Organizations, *Howard H. Conaway, George W. Liebmann* and *Frank, Bernstein, Conaway & Goldman* on the brief.

*Michael J. Schwarz,* with whom were *Needle, Ehudin & Schwarz* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., concur in the result.

When we granted certiorari while this case was pending in the Court of Special Appeals, we were of the impression that the result would be controlled by *Barry Properties, Inc. v.*

*Fick Bros. Roofing Co.*, 277 Md. 15, 353 A. 2d 222 (1976). Because of the peculiar posture in which this case reaches us, this may not necessarily obtain.

The Village of Cross Keys, Inc. (Cross Keys) is the owner of a tract of some 67 acres, located in Baltimore City's northern suburbs, which contains an office building; an inn; apartments; town houses, and a commercial area, known as the Village Square, consisting of shops and professional offices. In 1970, Cross Keys embarked on a program to enlarge the Village Square, a separate lot containing 5.45 acres. After the work had been substantially completed by another contractor in March of 1973, Cross Keys entered into three contracts on 23 May 1973 with Mark V Construction Company (the Prime Contractor) to finish three stores, which had been constructed as shells, to meet the requirements of tenants.

The Prime Contractor subcontracted with Caplan Bros., Inc. (the Subcontractor), a glazing contractor, for the installation of the glass required in three of the stores at a cost of $9,823.02, being a portion of the Prime Contractor's total price of $72,420.07 for finishing the three stores.

When the Subcontractor had completed its work and was unable to collect the contract price, on 25 September 1973 it gave Cross Keys notice (within 90 days of the completion of the work as required by Maryland Code (1974), Real Property Article § 9-103 (a) [1]) of its intention to file a mechanics' lien and thereafter filed its lien as required by § 9-105 (a) of the same Article. At the time the lien was filed in December, 1973, Code (1957, 1973 Repl. Vol.) Art. 21, § 9-106 required that the lien be enforced within two years. That period has since been reduced to one year by § 9-106 of the Real Property Article.

In June, 1974, the Subcontractor filed in the Circuit Court of Baltimore City a bill of complaint against Cross Keys to

---

1. As a matter of convenience, Code references in this opinion are to Maryland Code (1974), Real Property Article, Title 9. Only where there is a variance is reference made to Maryland Code (1957, 1973 Repl. Vol.) Art. 21, Title 9, which was in effect when the work was accomplished.

enforce the lien, accompanied by a motion for summary judgment.[2] Cross Keys answered, and filed a cross-motion for summary judgment, challenging the validity of the lien on two grounds: first, it said that a lien may only be asserted for the improvement of an existing building under § 9-101 (a) of the Real Property Article if the building is improved to the extent of one-fourth of its value:

"Every building erected and every building repaired, rebuilt, or improved, to the extent of one fourth of its value, is subject to a lien for the payment of all debts without regard to the amount contracted for work done for or about the building, and for materials furnished for or about the building, including the drilling and installation of wells for the purpose of supplying water, the construction or installation of any swimming pool, the sodding, seeding or planting in or about the premises of any shrubs, trees, plants, flowers, or nursery products of any kind or description and the grading, filling, landscaping, and paving of the premises."

Second, Cross Keys said that the Subcontractor had asserted its lien against the entire 67 acre tract, which contains some 40 buildings in addition to those located on the 5.45 acre tract comprising the Village Square. Cross Keys maintained that this fails to conform to § 9-102 (a) of the same Article:

"The lien shall extend to the land covered by the building and to as much other land, immediately adjacent and belonging in like manner to the owner of the building, as may be necessary for the ordinary and useful purposes of the building. The quantity and boundaries of the land may be designated as provided in this section,"

---

**2.** Also joined as defendants were The Rouse Company, the corporate parent of Cross Keys, whose demurrer was sustained, and Hillen Electrical Company, another lienor, joined as required by Maryland Rule BG71 c 1.

and contended that it was entitled to have the boundaries designated as contemplated by § 9-102 (b):

> "An owner of any land who is desirous of erecting any building or of contracting with any person for its erection may define in writing the boundaries of the land appurtenant to the building before the commencement of construction, and then file the boundaries for record with the clerk of the circuit court of the county. The designation of boundaries shall be binding on all persons. In default of the designation of boundaries before the commencement of any building, the owner of the land or any person having a lien on the land by mortgage, judgment or otherwise, or entitled to a lien by virtue of this title, may apply by petition in writing to the circuit court of the county to designate the boundaries."

*See also* Maryland Rule BG76.

The Circuit Court of Baltimore City referred the case to the General Equity Master of the Supreme Bench for report and recommendation.[3] The Master concluded that there was a dispute as to the material facts, and, therefore, the Subcontractor's motion for summary judgment should be denied; that Cross Keys' motion should be denied for the same reason, insofar as it challenged the validity of the manner in which the lien was claimed, but should be granted on the constitutional issue. The Subcontractor excepted to the Master's report and recommendation. From an order overruling its exceptions and dismissing the bill of complaint, the Subcontractor appealed.

There are two reasons why we think the ruling on the exceptions must be modified. The first is that judicial restraint suggests that the issue of constitutionality not be

---

**3.** Apparently, at an informal conference before the General Equity Master, Cross Keys questioned the constitutionality of Maryland's mechanics' lien statute. The constitutional issue was further raised in a letter to the court following the report and recommendation of the Master. The parties had agreed to proceed solely on this issue.

addressed if the same result can be achieved on other grounds, *Tauber v. Montgomery County,* 244 Md. 332, 337-38, 223 A. 2d 615, 618-19 (1966); *Middleman v. Maryland-National Cap. Park & Planning Comm'n,* 232 Md. 285, 289, 192 A. 2d 782, 783 (1963); *State v. Insley,* 64 Md. 28, 30 (1885). It is possible that, at an evidentiary hearing, it may be determined that the work performed by the contractor was not the completion of a partially erected structure and did not improve the building to the extent of one-fourth of its value as required by § 9-101 (a), or that the lien should not have been asserted against the entire 67 acre tract.

The second, which the chancellor could not have anticipated, is that the rationale of *Barry Properties, Inc. v. Fick Bros. Roofing Co., supra,* 277 Md. 15 (that the lien may be perfected upon the successful conclusion of the proceeding to enforce it) might well give the Subcontractor an advantage to which it would not be entitled if it is the holder of a lien which may be otherwise infirm.

For these reasons, we shall vacate the order dismissing the Subcontractor's bill of complaint and remand the case for further proceedings to determine whether the lien claimed by the Subcontractor can survive Cross Keys' cross-motion for summary judgment, and thus be perfected in the fashion contemplated by *Barry Properties, Inc. v. Fick Bros. Roofing Co., supra.*

> *Order dismissing bill of complaint vacated; case remanded for further proceedings as hereinabove set forth.*
> *Costs to abide the result.*